[L. A. No. 19885.   In Bank.   Dec. 16, 1947.]

W. TANNHAUSER, Appellant, v. E. O. ADAMS, Respondent.

Solon S. Kipp and W. E. Starke for Appellant.

Stickney & Stickney, Edward Strop and Virgil S. Kipp for Respondent.

SCHAUER, J.—Plaintiff appeals from an adverse judgment in his suit to quiet title to real property in San Diego County to which defendant holds a tax deed from the State of California. Defendant concedes that plaintiff is the owner of the property unless defendant has acquired ownership thereof through the tax proceedings which culminated in his deed from the state, and except as his interest is protected by the statute of limitations. Plaintiff, to defeat defendant's tax title, relies upon an irregularity in the tax proceedings which occurred subsequent to a tax sale of the property to the state but prior to the deed to the state and the later deed to defendant. For reasons hereinafter stated, we have concluded that by the questioned proceedings defendant acquired at least color of title and that plaintiff's action is barred by the time limitations set forth in section 3521 of the Revenue and Taxation Code, and pleaded by defendant. Consequently, the judgment must be affirmed.

In 1933, upon proceedings which are not challenged, the land involved was sold to the state for delinquent 1932 taxes. (See former Pol. Code, §§ 3764, 3771.) The property was not redeemed, and by a tax deed dated July 1, 1938, and recorded August 5, 1938, the San Diego County Tax Collector deeded or purported to deed it to the state. (See former Pol. Code, § 3771a.) By deed dated January 14, 1941, and recorded January 20, 1941, the state deeded whatever interest it had in the land to defendant. (See Rev. & Tax. Code, ch. 7.) It is not disputed that upon receipt of the deed defendant took and since then has been in continuous possession of the land, and has cleared it of certain brush at a cost of over $500, cultivated it, added fencing, and paid accruing taxes. On January 12, 1942, the plaintiff herein commenced an action against this defendant to quiet title to the disputed property; the defendant filed his answer on February 3, 1942; and on September 13, 1944, that action was dismissed on defendant's motion for want of prosecution. On February 21, 1945, plaintiff filed a notice of motion to set aside the order of dismissal and on February 27, 1945, the motion to set aside the dismissal was denied. The pending action was commenced on the last-mentioned date.

The only attack made by plaintiff upon the deeds and the proceedings leading up to them is directed to the failure of the tax collector, prior to the deed to the state in 1938, to send by registered mail a notice to plaintiff as the last

assessed owner, as required by former section 3771a of the Political Code, then in force. That section provided, in part, that "On the day and hour fixed for the sale [for delinquent taxes] in accordance with subdivision two of section three thousand seven hundred sixty-four of this code, all property which has not been redeemed from the sale to the state or the sale thereon canceled, shall be sold by the tax collector at public auction to the highest bidder . . . ; if no sale is had under the provisions of this section, then said property shall be deeded to the state as provided in section three thousand seven hundred eighty-five of this code; provided, that when any property is to be sold at public auction as provided in this section, the tax collector shall, within five days after the first publication of said delinquent list, mail a copy of said list or publication, postage thereon prepaid and registered, to the party to whom the land was last assessed next before such sale, at his last known address, said notice to be mailed at least twenty-one days before the date of sale or in lieu of mailing the entire printed list said tax collector may mail to the party to whom the land was last assessed next before the sale at his last known postoffice address, postage thereon prepaid and registered, a printed notice of such sale. . . ." Neither the *publication* of notice prior to *deed* to the state (see former Pol. Code, § 3764), nor the regularity of the proceedings, including the sufficiency of the notice, prior to the *sale* to the state in 1933, is questioned by plaintiff; consequently, they will be presumed. (Code Civ. Proc., § 1963, subd. 15.)

Defendant contends that plaintiff's action is barred by the limitations provisions of sections 3521 and 3725 of the Revenue and Taxation Code, and that failure to mail the notice before deed to the state was cured by the validating acts of 1943 and 1945 (Stats. 1943, p. 1993, ch. 458; Stats. 1945, p. 2176, ch. 1134; 3 Deering's Gen. Laws, Acts 8443, 8443a). Plaintiff maintains that failure to mail the notice is a "jurisdictional" defect in the tax proceedings and that therefore his right to raise it cannot be cut off by statutes of limitations and the defect is not curable by subsequent legislative validating acts. We are of the view, however, that although such a failure has on occasion been termed a "jurisdictional" defect, a delinquent taxpayer's right to raise it may, at least under the circumstances shown in this case, be terminated by limitations statutes. Consequently, it becomes unnecessary to here

consider the scope and constitutionally permissible effect of the curative acts.

Section 3521 of the Revenue and Taxation Code became effective on May 19, 1941, and operative on June 1, 1941, and reads as follows: "A proceeding based on an alleged invalidity or irregularity of any deed to the State for taxes or of any proceedings leading up to the deed can only be commenced within one year after the date of recording of the deed to the State in the county recorder's office or within one year after June 1, 1941, whichever is later.

"Sections 351 to 358, inclusive, of the Code of Civil Procedure do not apply to the time within which a proceeding may be brought under the provisions of this section."

Section 3725 of the same code was enacted in 1939. It is found in the chapter dealing with sales to private parties after deed to the state, and provides that "A proceeding based on alleged invalidity or irregularity of any proceedings instituted under this chapter can only be commenced within one year after the date of execution of the tax collector's deed."

Inasmuch as plaintiff's sole attack is directed against the proceedings prior to deed to the state, it is apparent that this case falls under the purview of section 3521 rather than that of section 3725. (See *Davault* v. *Essig* (1947), 80 Cal.App.2d 970, 972 [183 P.2d 39].)

As stated above, plaintiff commenced this suit on February 27, 1945, which was more than six and one-half years after the recording (on August 5, 1938) of the tax deed to the state and more than three and one-half years after June 1, 1941—the last date mentioned in section 3521. If that section applies here, plaintiff's right to institute suit attacking the deed to the state expired on June 1, 1942, and this suit is barred.

Plaintiff does not contend that the limitation period as fixed by the Legislature operates within so short a time as to give him no reasonable opportunity to exercise his remedy (see *Rand* v. *Bossen* (1945), 27 Cal.2d 61, 65 [162 P.2d 457]), but as stated above, he urges that the defect in the notice to him prior to deed to the state is "jurisdictional" in nature and that therefore the limitation period cannot apply.

In support of his position, plaintiff cites cases from other jurisdictions in which for various reasons the statutes of limitations relied upon by the tax sale purchasers were held to be inapplicable. Thus, in certain of such cases, the court held the limitation statute under discussion to be inapplicable

because by its terms it barred possessory actions whereas the suit before the court was to quiet title (see *Farrar* v. *Clark* (1882), 85 Ind. 449, 454; *Gabe* v. *Root* (1884), 93 Ind. 256, 259; *Kingore* v. *Wallace* (1929), 85 Colo. 381 [276 P. 332]; *Munson* v. *Marks* (1912), 52 Colo. 553 [124 P. 187]; *Empire Ranch & Cattle Co.* v. *Mason* (1912), 22 Colo.App. 612 [126 P. 1129]; cf. *Neilan* v. *Unity Investment Co.* (1910), 147 Iowa 677 [126 N.W. 947]) or to cancel the tax deeds (see *Kennedy* v. *Sanders* [1907], 90 Miss. 524 [43 So. 913]). In other instances, the land involved was exempt from the "tax" for which it had been sold (see *Hutchison* v. *Brown* (1917), 66 Okla. 250 [167 P. 624]; *Taylor* v. *Miles* (1870), 5 Kan. (2d ed.) 302, 311 [7 Am.Rep. 558]; *Kennedy* v. *Sanders, supra*), the "taxes" had been levied under a statute which had been decreed to be unconstitutional (*Eastland* v. *Yazoo Delta Lbr. Co.* (1907), 90 Miss. 330 [43 So. 956]), or no actual assessment had ever been made (see *Bradshaw* v. *Brady* (1917), 38 S.D. 279 [161 N.W. 195]). In still other cases the original sale of the property for delinquent taxes was by the terms of the statute authorized only after court foreclosure proceedings; and it was held that by reason of defective service of summons or other notice of such proceedings no jurisdiction was acquired by the court and consequently the foreclosure decree and all titles dependent thereon were completely void and not protected by limitations statutes (see *Elliott* v. *Clement* (1944), 175 Ore. 44 [149 P. 2d 985, 151 P.2d 739]; *Powell* v. *Turpin* (1944), 224 N.C. 67 [29 S.E. 2d 26]; cf. *Clifford* v. *Hyde County* (1909), 24 S.D. 237 [123 N.W. 872], in which decree was entered prior to expiration of time allowed to answer). However, as pointed out in *Elliott* v. *Clement, supra,* in Washington, where, also, sale was had only after court decree, the opposite view has been taken, and a limitation statute held to bar the right to attack the tax title even though service of summons did not meet statutory requirements (see *White* v. *Gehrman* (1939), 1 Wn.2d 504 [96 P.2d 453, 455]; *Eagles* v. *General Electric Co.* (1940), 5 Wn. 2d 20 [104 P.2d 912, 914]).

Where, as here, the defect in the tax proceedings has consisted of failure to give the statutory notice prior to application for or issuance of deed to the tax sale purchaser or prior to expiration of time for redemption, it is held in some jurisdictions that the right to raise the defect is not cut off by a limitation statute (see *Campbell* v. *McGrath* (1926), 117 Okla.

126, 127 [245 P. 634]; *McAfee* v. *Harden* (1937), 180 Okla. 546 [71 P.2d 463, 464]; *Lind* v. *Stubblefield* (1929), 138 Okla. 280 [282 P. 365]; *Rock Island Improvement Co.* v. *Davis* (1945), 195 Okla. 513 [159 P.2d 728, 732]; *Smith* v. *Huber* (1938), 224 Iowa 817 [277 N.W. 557, 115 A.L.R. 131, 136-139]; *Small* v. *Hull* (1934), 96 Mont. 525 [32 P.2d 4, 6-7]). In New York the courts have held to the contrary as to defects there considered to be jurisdictional in nature (see *Meigs* v. *Roberts* (1900), 162 N.Y. 371 [56 N.E. 838, 840, 76 Am.St. Rep. 322]; *Dunkum* v. *Maceck Building Corp.* (1931), 256 N.Y. 275, 286-287 [176 N.E. 392]; *Ostrander* v. *Darling* (1891), 127 N.Y. 70 [27 N.E. 353, 355]), and the same view is expressed by the Supreme Court of the United States in *Saranac Land etc. Co.* v. *Comptroller of N.Y.* (1899), 177 U.S. 318, 330 [20 S.Ct. 642, 34 L.Ed. 786].

However, as pointed out by the court in *Small* v. *Hull, supra* (at p. 7 of 32 P.2d) the limitations statutes under consideration in the New York cases commenced to run either upon the recording of the deed or the taking of possession by the tax deed purchaser, or both, and under such statutes and the facts of the cases, the original owner had notice as to when the statute would begin to run against him. Thus, in *Ostrander* v. *Darling, supra,* the period of limitation was measured from the date of recordation of the tax deed in the county clerk's office and the court held (p. 355 of 27 N.E.) that after the statutory period, attack on the deed by reason of a defective notice to redeem was barred. The land there in question was not occupied by the plaintiffs (the successors in interest of the original owners) or by anyone on their behalf, whereas the defendant tax purchaser had exercised acts of ownership over it. In *Meigs* v. *Roberts* (1900), *supra,* 162 N.Y. 371 [56 N.E. 838, 76 Am.St.Rep. 322], upon which defendant in the present case places particular reliance, the former owner was out of possession, the tax deed grantee was in possession, and the statute was held to run. The court observes, however (p. 840 of 56 N.E.), "It is questionable whether, as to an owner in actual possession of land, the record of a hostile conveyance in the clerk's office is sufficient to set a statute of limitations running against him so as to destroy his title." (Cf. *People* v. *Ladew* (1924), 237 N.Y. 413 [143 N.E. 238, 243]; *People* v. *Ladew* (1907) 189 N.Y. 355 [82 N.E. 431, 432]; *Dunkum* v. *Maceck Building Corp.* (1931), *supra,* 256 N.Y. 275, 286, 287 [176 N.E. 392].) As a

second ground of decision that the limitation statute was not operative in *Lind* v. *Stubblefield* (1929), *supra*, 138 Okla. 280 [282 P. 365, 367], the court stated, "It must be remembered that the plaintiff [original owner] alleged possession of the premises. In a well-known text (Cyc. vol. 37, p. 1505), under the subject of 'Taxation and Tax Titles,' directly on the point at issue, it is said:

" 'So long as the original owner of land which has been sold for taxes remains in undisturbed possession of it, the statute of limitations does not run against him or prevent the maintenance of a suit to set aside the tax sale or remove the cloud on his title.'

"The above text is supported by citation of authorities from nearly all the states, among them being the case of *Cadman* v. *Smith,* 15 Okl. 633, 85 P. 347."

In *Saranac Land etc. Co.* v. *Comptroller of N. Y.* (1900), *supra,* 177 U.S. 318, 327-328 [20 S.Ct. 642, 32 L.Ed. 786], upon which defendant also relies, it was held that the same New York limitation statute which was applied in the Meigs case, *supra,* could constitutionally bar the plaintiff's right to attack defendant's tax title even though the defects relied upon be jurisdictional. Here again the original owner was out of possession and the tax purchaser in possession.

Other instances of the general principle that a limitation statute will not run against one in possession of land are found in 34 American Jurisprudence, where it is said (p. 29), "A person in the possession of property cannot be required under penalty of forfeiture to bring an action against one claiming an adverse interest or title to such property . . . [p. 296.] [A] statute cannot be sustained as one of limitation where it requires one in possession of property to bring an action within a given time or forfeit it, and it is laid down in a number of cases that as a general rule, the statute of limitations does not run against one in possession of land. Thus, the statute does not run against a mortgagee in possession, because he is in the actual possession of all the law gives him and the possession itself is prima facie evidence that the money is not paid. For a similar reason, it has been asserted that the statute does not begin to run against a cestui que trust in possession until the date of his ouster, no matter what the nature of the trust may be, and it is held that no time bars the right, under either statute of limitations or presumption of payment, of a vendor to

recover purchase money for land, if he has not parted with the legal title. So, also, where a mortgagor of land has remained in possession and brings suit to enforce specific performance of his agreement to purchase the land from the purchaser at the foreclosure sale, the statute of limitations governing actions to recover land held under judicial sales has no application.'' (See, also, *Buty* v. *Goldfinch* (1913), 74 Wash. 532 [133 P. 1057, Ann.Cas. 1915A 604, 46 L.R.A.N.S. 1065 and note thereto].)

Regardless of what may be the law under other circumstances, it appears to us that there is no sound reason why the right of one out of possession to attack a tax title for the defect here relied upon, whether it be considered jurisdictional or otherwise, should not be barred if his action is not instituted within the prescribed statutory period, provided that such period is a reasonable one. In *Miller & Lux Inc.* v. *Secara* (1924), 193 Cal. 755, 765 [227 P. 171], this court declared that although ''a total lack of jurisdiction due to absence of notice sufficient to constitute due process of law cannot be cured by a curative act or by a curative provision in the statute, . . . we can see no reason why such a defect may not be cured, in effect, by a statute of limitations, provided the latter is not unreasonable and is therefore valid.'' (See, also, *Title Guar. & Trust Co.* v. *Woody* (1944), 63 Cal. App.2d 209, 211-213 [146. P.2d 252].)

In *Alhambra Add. Water Co.* v. *Richardson* (1887), 72 Cal. 598, 600, 601 [14 P. 379], it was held that although the doctrine that statutes of limitations ''are designed to affect the remedy, and not the right, or contract'' applies with respect to contract rights, ''it has been the settled rule ever since the case of *Arrington* v. *Liscom,* 34 Cal. 365 [94 Am.Dec. 722], that the possession of property of the requisite character and time confers a title to the property. [Citations.] So far, therefore, as the title . . . to real property is concerned,—prescription and limitation are convertible terms; and a plea of the proper statute of limitations is a good plea of a prescriptive right.'' (See, also, *Churchill* v. *Louie* (1902), 135 Cal. 608, 610 [67 P. 1052] ; *Beckett* v. *City of Petaluma* (1915), 171 Cal. 309, 312 [153 P. 20].)

To apply the same principle against a tax-delinquent owner out of possession of his property but who seeks to attack the tax title of one in possession is, we believe, to place him at no greater disadvantage than are other litigants who

by reason of their lack of promptness in asserting their claim find themselves either without remedy or without right.

As stated above, defendant in the present case appears to have been in uninterrupted possession of the land since the date of the deed to him in January, 1941, and to have exercised various acts of ownership over it, while plaintiff has remained out of possession. The filing by plaintiff, on January 12, 1942, of the earlier quiet title action establishes his actual knowledge at least as early as that date of defendant's claim of title. We are of the opinion that under the circumstances shown there is not, upon any view of the law, a constitutional basis for refusing to apply the limitation statute hereinabove quoted as against plaintiff's claim.

Plaintiff also urges that this is a suit in equity and that we "should take . . . [the] facts into consideration, and not invoke the Statute of Limitations." But we find no tenable basis either in law or in equity upon which plaintiff can avoid the bar of the statute. The statute has been invoked, not by the court, but by defendant under the law of this state. By the running of the statute "the title to the property, irrespective of the original right, is regarded as vested in the possessor" and even "the subsequent repeal of the limitation law cannot be given a retroactive effect so as to disturb the title." (*Peiser* v. *Griffin* (1899), 125 Cal. 9, 14 [57 P. 690]; see, also, *Chambers* v. *Gallagher* (1918), 177 Cal. 704, 708-709 [171 P. 931].) The doctrine announced by this court in *Bollinger* v. *National Fire Ins. Co.* (1944), 25 Cal.2d 399, 406-411 [154 P.2d 399], that in an action which "is in reality a continuance of the earlier action [commenced in time] involving the same parties, facts, and cause of action, and was promptly filed after entry of the judgment on the nonsuit, plaintiff should not be deprived of a trial on the merits . . ." and the running of the statute will be "suspended," is not applicable here. In the Bollinger case the opinion states that plaintiff (p. 410 of 25 Cal.2d) "brought his [first] action . . . in good time and *diligently pursued it*" (italics added) but "through error of the trial court [in the first action] was not allowed to proceed to trial." Here the two actions do involve "the same parties, facts [except those occurring subsequent to filing of the first action], and cause of action," but there the similarity ends. The first action brought by this plaintiff was not diligently pursued; it was dismissed for want of prosecution; plain-

tiff failed to secure a trial on the merits in that action not because of error of the court but because of his own (or his then attorney's) neglect. We are satisfied that the pleaded statute (Rev. & Tax. Code, § 3521) is available to defendant and that it bars plaintiff's claim.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.